PIA WINSTON
Attorney
National Labor Relations Board
Contempt, Compliance, and Special
Litigation Branch
1015 Half St, S.E., Fourth Floor
Washington, D.C. 20003
Tel: (202) 273-0111
Pia.Winston@nlrb.gov
Attorney for Plaintiff

**UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION**

| | |
|---|---|
| **NATIONAL LABOR RELATIONS BOARD,** | |
| Plaintiff, | Case No.: 6:20-CV-00203-MK |
| v. | **NATIONAL LABOR RELATIONS BOARD'S SUPPLEMENTAL BRIEF REGARDING INJURY AND IMPACT** |
| **STATE OF OREGON,** | |
| Defendant. | |

WILLIAM G. MASCIOLI
Assistant General Counsel

DAWN L. GOLDSTEIN
Deputy Assistant General Counsel

HELENE D. LERNER
Supervisory Attorney

Dated: this 4th day of August, 2020
In Washington, D.C.

PIA WINSTON
Attorney
National Labor Relations Board
Contempt, Compliance, and Special Litigation Branch
1015 Half Street, S.E.
Washington, D.C. 20003
Tel: (202) 273-0111
Pia.Winston@nlrb.gov

**The Existence of the Oregon Statute Causes Cognizable Article III Injury to the Board**

1. The State of Oregon's enactment of, and affirmative conduct giving effect to, ORS 659.780 and 659.785 ("the Statute") is in direct conflict with the National Labor Relations Act [29 U.S.C. Sections 151-169] ("NLRA"). As such, it causes ongoing injury to the Board's interests in enforcing the NLRA and preventing interference with its regulatory authority, as explained in the Board's Opp. to the MTD (Doc. 12 at 9-14). In *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1165–67 (10th Cir. 1996), the Tenth Circuit found a Colorado ethics provision created cognizable Article III injury because the United States alleged that the provision interfered with federal prosecutors' conduct during criminal proceedings and changed the nature of federal grand juries in Colorado. Likewise, in *United States v. Bd. of Cty. Commissioners of the Cty. of Otero*, 184 F. Supp. 3d 1097, 1109–10 (D.N.M. 2015), the district court ruled that state and local provisions that merely threatened to impede on the regulation of federal land were sufficient to establish Article III injury to the United States. And in *United States v. South Carolina*, 840 F. Supp. 2d 898, 911-12 (D.S.C. 2011), the district court held that the federal government possessed standing to challenge a state law interfering with federal immigration regulation. *Cf. United States v. Composite State Bd. of Med. Examiners, State of Ga.*, 656 F.2d 131, 136 (5th Cir. 1981) (when "the United States seeks relief against a state or its agency, the state and federal governments are in direct conflict before they arrive at the federal courthouse"). Here too, the Oregon statute's interference with Board proceedings injures the federal government and creates unavoidable conflict.

2. Specifically, the Statute impairs the administration of the NLRA by inhibiting employers from holding mandatory meetings to express their views regarding labor organizations. The Statute interferes with the Board's "exclusive primary competence," *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959), to distinguish coercive speech that violates 29 U.S.C. 158(a)(1) or is prejudicial to a fair election, *see, e.g., NLRB v. Gissel Packing Co.,* 395 U.S. 575, 620 (1969), from

non-coercive speech that enhances employee free choice and is therefore immune from regulation. *See* 29 U.S.C. 158(c); *Trent Tube Co.,* 147 NLRB 538, 541 (1964). (Doc. 12 at 3-7). This injury is ongoing because the Board is hindered in enforcing a uniform national body of labor law. For example, there are currently eight pending union representation elections in the state of Oregon (*see* Doc. 12 at 13-14, n. 7), all of which are impacted by this state-federal conflict, because each employer must choose whether to exercise its NLRA rights or comply with the Oregon statute, lest it risk treble damages and attorneys' fees. ORS 659.785(2).

3. ORS § 659.785(3) provides that "[a]n employer subject to this section shall post a notice of employee rights under this section in a place normally reserved for employment-related notices and in a place commonly frequented by employees." This affirmatively commands Oregon employers (most of whom are covered under the NLRA, *see* Doc. 12 at 5, n. 2) to inform their employees that they may absent themselves from employer meetings about unions. In contrast, when an NLRB election occurs, the Board requires the employer to post both a notice of election petition and a later notice of election; both notices explain that under federal law, captive audience meetings are *only* proscribed by federal labor law when held within 24 hours before the election. (*See* accompanying Declaration of Jessica Dietz).[1] The notice required by ORS § 659.785(3) directly conflicts with the notice posted in compliance with NLRB election procedures, as well as federal law. This conflict creates misunderstanding about what employee and employer conduct is legally protected, presents employees with inconsistent instructions regarding their rights, and frustrates the Board's administration of national labor policy. In fact, the conflicting directives between federal labor law

---

[1] The Court may consider facts, including evidence and affidavits, outside the pleadings to decide a motion to dismiss for lack of subject-matter jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Moreover, state statutes are subject to judicial notice. *Von Segerlund v. Dysart,* 137 F.2d 755, 758 (9th Cir. 1943). If necessary, the interests of justice would be served by granting leave to amend the Board's complaint. *See* Fed. R. Civ. P. 15(a)(2).

and Oregon's statute have led to confusion on the part of several employees and unions and expenditure of the Board's limited administrative resources. (*See* Declaration at Para. 4).

4. The Board need not await state-court litigation invoking the Statute to suffer injury. *South Carolina*, 840 F. Supp. 2d at 908 ("A plaintiff who challenges a statute must face a realistic danger of sustaining a direct injury, but the plaintiff need not await actual suffering of that injury, such as an arrest, to obtain preventive relief"); *Otero*, 184 F. Supp. 3d at 1109–10 ("It is not determinative … that no county official has as of yet entered [federal] lands without consent, for the United States correctly asserts that it need not wait for the County to actually trespass and cause the United States irreparable injury.").

**A Favorable Decision from this Court Will Likely Redress the Board's Injury By Its Practical Impact and Legal Effect**

5. The relevant redressability inquiry is whether a favorable decision is likely, not certain, to redress plaintiff's injury. *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010). This "relatively modest" burden is met where a "practical consequence" of the court's decision would create a "significant increase in the likelihood that the plaintiff would obtain relief." *Renee v. Duncan*, 623 F.3d 787, 797–98 (9th Cir. 2010). It is also axiomatic that "a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every injury*." *Larson v. Valente,* 456 U.S. 228, 243 n.15 (1982) (emphasis added).

6. When examining whether local regulation has potential to frustrate federal policy, it is appropriate to consider the practical impact of the local regulation, including effects it may have in other cases or jurisdictions. For example, in *United States v. City of Philadelphia*, the Third Circuit held that a city agency's order impermissibly interfered with military recruiting and noted that it was appropriate to consider not only the particular interference alleged, but the impact on recruiting at the same location and others in the city, as well as the possibility of other jurisdictions adopting

similar regulatory mandates. *Id.*, 798 F.2d 81, 88 (3d Cir. 1986).

7. Oregon's argument that this Court is unable to grant relief redressing the Board's injury ignores the practicalities of that injury, which necessarily differs from that of a private litigant, such as the plaintiff in *Associated Oregon Indus. v. Avakian*, No. CV 09-1494-MO, 2010 WL 1838661 (D. Or. May 6, 2010). Here, a judgment holding the Statute preempted would deter attempts to enforce it in state courts and minimize the likelihood of interference with the Board's national administration of labor law in Oregon and beyond.

8. Moreover, Oregon's contention that the Statute may only be enforced by private persons (Doc. 6 at 5) is contradicted by ORS § 651.050. That statute vests Oregon's Bureau of Labor and Industries ("the Bureau"), with the power to enforce, by its Commissioner, all state laws "regulating the employment of adults and minors" and all laws "enacted for the protection of employees." ORS § 651.050. An Oregon appellate court described this and a similar provision as "broad grants of authority" which included the ability to seek injunctive remedies against violations.[2] *Nw. Advancement, Inc. v. State, Bureau of Labor, Wage & Hour Div.*, 772 P.2d 934, 942 (Or. App. 1989). This provision authorizes the Commissioner to enforce the Statute, particularly the notice-posting requirement contained in ORS § 659.785(3); that particular requirement is unlikely to be privately enforced as it is implausible that violation of this requirement would result in money damages.[3] Thus, a judgment

---

[2] While a previous Commissioner averred in prior litigation that he would not bring enforcement actions under ORS § 659.785 (Doc. 6 at p. 8), this statement did not even bind his own actions in future cases, let alone any subsequent office holders.

[3] Moreover, Oregon gives effect to the Statute in a manner that impairs the NLRB's regulatory interests, through the state's offices and programs, even without court action. Presently, the Bureau's website provides information and guidance to Oregon employers and employees. The challenged statute is linked there under the headings "Oregon statutes and administrative rules govern the work that the [Bureau] does" and "Applicable Oregon statutes." The website suggests the Statute is generally applicable to Oregon employers, and prominently describes the statutory enforcement duties of the Commissioner. *See* https://www.oregon.gov/boli/about/Pages/statutes-and-rules.aspx?wp1771=p:1#769f2eb7-991b-4db6-ad98-2ff32ab22dbb last accessed July 30, 2020. Information on a government website is generally subject to judicial notice. *See Daniels–Hall v. National Education Association,* 629 F.3d 992, 999 (9th Cir. 2010)).

finding the Statute preempted would preclude all such actions by the Commissioner. *See Bland v. Fessler*, 88 F.3d 729, 738 (9th Cir. 1996) (redressability found even where a challenged statute conferred a private right of action to parties not before the court; a favorable judgment would be "of immense benefit" and preclude the state from relitigating the law's validity against the plaintiff).

9. And although the Oregon Attorney General does not appear to have any direct role in the enforcement of the Statute, the office does have a statutory right (but not an obligation) to give its views in state-court cases where (as here) a party seeks a declaration that a state statute is unconstitutional. ORS § 28.110. The court in *Bland*, above, approved the Fourth Circuit's reasoning that a state attorney general's ability to intervene in private litigation to defend a challenged statute's constitutionality supported standing. *See* 88 F.3d at 738 (citing *Mobil Oil Corp. v. Attorney Gen. of Com. of Va.*, 940 F.2d 73, 77 (4th Cir. 1991)). Similarly, a favorable decision from this Court would bind the office of Oregon's Attorney General who, given the vigorous defense of the validity of the Statute it has offered here, would be likely to take a similar position in state-court proceedings.

10. Finally, a favorable judgment would bind the State and its officers from giving effect to the Statute in a manner that interferes with the administration of the NLRA through direct litigation or other affirmative conduct.[4] Because a favorable judgment is likely to relieve a discrete injury to the Board's regulatory interests, its injury is redressable by the Court.

---

[4] Oregon's argument that a declaration from this court that the Statute is invalid would be merely advisory on Oregon's courts is also unsupported by the authorities it relies upon. Oregon has cited no authority holding that a judgment to which the state is a party would not bind state judicial officers. The scope of other and further relief needed to effectuate a judgment may raise complicated questions where a state is a party, but presaging such difficulties does not require the Court to withhold its jurisdiction. *See Nebraska v. Wyoming*, 325 U.S. 589, 616 (1945).

Respectfully submitted,

WILLIAM G. MASCIOLI
Assistant General Counsel

DAWN L. GOLDSTEIN
Deputy Assistant General Counsel

HELENE D. LERNER
Supervisory Attorney

_____s/ Pia Winston_____
PIA WINSTON
Attorney
National Labor Relations Board
Contempt, Compliance, and Special Litigation Branch
1015 Half Street, S.E.
Washington, D.C. 20003
Tel: (202) 273-0111
Pia.Winston@nlrb.gov

Dated: this 4th day of August, 2020
In Washington, D.C.

6-  NLRB Supplemental Brief

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Supplemental Brief Regarding Injury and Impact was filed with the Clerk of the Court using the CM/ECF system on August 4, 2020. Notification of this filing will be sent to the following:

ELLEN F. ROSENBLUM
Attorney General

CHRISTINA L. BEATTY-WALTERS #981634
Senior Assistant Attorney General

CARLA A. SCOTT #054725
Senior Assistant Attorney General
Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Tina.BeattyWalters@doj.state.or.us
Email: Carla.A.Scott@doj.state.or.us

                                                    <u>s/ Pia Winston</u>
                                                   PIA WINSTON
                                                   Trial Attorney
                                                   National Labor Relations Board
                                                   Contempt, Compliance & Special Litigation Branch
                                                   1015 Half Street, S.E., Fourth Floor
                                                   Washington, D.C. 20003
                                                   Phone: (202) 273-0111
                                                   Fax: (202) 273-4244